STATE v. JENKINS.

(*Knoxville.*    October 13, 1891.)

INDICTMENT.    *For intimidation of check-weighman insufficient.*

Indictment against mine-owner for interfering with, and intimidation of, a check-weighman employed by his miners is not sufficient which charges that the interference and intimidation were unlawful and willful, and effected by means of threats that he would close his mine and deprive the miners of employment, thereby forcing the discharge of the check-weighman, there being no allegation that the mine-owner acted fraudulently.

Act construed : Acts 1887, Ch. 206.

FROM ANDERSON.

Appeal in error from Circuit Court of Anderson County.    W. R. HICKS, J.

Attorney-general PICKLE, SAM EPPS YOUNG, and J. A. FOWLER for State.

D. K. YOUNG & SON, C. J. SAWYERS, and HENDERSON & JOUROLMON for Jenkins.

TURNEY, Ch. J.    The material parts of the statute of March, 1887, under which this indictment is drawn, read thus: "That at every coal or other

State *v.* Jenkins.

mine in this State, where coal or other minerals are mined by weight or measure, the miners, or a. majority of those present at a meeting called for the purpose, shall have the right to employ a competent person as check-weighman or check-measurer, as the case may require, who shall be permitted at all times to be present at the weighing or measuring of coal; also have power to weigh or measure the same, and he shall not be considered a trespasser, during working hours, while attending to the interest of his employers; and in no manner shall he be interfered with or intimidated by any person, agent, owner, or miner; and any person violating these provisions shall be held and deemed guilty of a misdemeanor, and, upon conviction thereof, he shall be punished by a fine of not less than twenty dollars and not exceeding one hundred dollars, or imprisoned, at the discretion of the Court."

This indictment avers "that B. A. Jenkins did, on January 10, 1890, in the State and county aforesaid, unlawfully and willfully interfere with and intimidate Hendricks Bradley, who had been and was employed by the miners, at a meeting called for that purpose, as check-weighman for them at the Tennessee Mines of the Tennessee Coal Company, in the Thirteenth Civil District of said county and State, by unlawfully threatening the said miners that if they did not discharge said Hendricks Bradley that the said B. A. Jenkins, who was then president of the said mining com-

pany and had the control of same, would close down and shut the same; and by such threats and interference he, the said B. A. Jenkins, did intimidate said miners, and caused and forced them until they did discharge the said Hendricks Bradley from the place of check-weighman, although he was doing his duty according to law, against the peace and dignity of the State."

It is apparent the language of the statute does not make it obligatory on the miners to employ a check-weighman, nor upon the owners of mines to operate them if a check-weighman is employed. Each party has its election. If a check-weighman is selected as allowed by law, the mine owner is guilty of no violation of the statute in refusing to continue to work the mines. To say to the miners "that if *they* did not discharge Hendricks Bradley he (B. A. Jenkins) would shut down and close the mines," was but a declaration of what, under the law, he had the right to do. If a threat, it was one made not in contravention of the rights of the miners. There is no averment of a fraudulent purpose on the part of Jenkins, and we cannot assume it on a motion to quash. The property in or control of the mine being in Jenkins, he had the right to stop the work at any time, and to dispose of the property in any way he saw proper. If the miners yielded to his threats to "close down and shut the mines," and discharged their check-weighman, it cannot, in legal contemplation, be attributed to an interference with or intimida-

State *v.* Jenkins.

tion of the check-weighman. To have the advantage of the statute, the miners should have adhered to their selection of a check-weighman until Jenkins should have done some act interfering with or intimidating him in the duties of his position. By acceding to the announced purpose of Jenkins, the miners waived their rights under the statute.

There is nothing in the law to prevent miners and mine-owners from contracting to work without enforcing the right (an optional one) of the miners to employ a competent person as check-weighman, nor to prevent the mine-owner to decline to operate his mine by such employes as demand such weighman, or to refuse to operate at all. Except in violation of contract, the owner may cease to operate a mine at will.

Judgment sustaining the motion to quash is affirmed.

---

#### DISSENTING OPINION.

LEA, J. I cannot agree with the conclusion reached by a majority of the Court. I admit that the defendant had the right to close his mine at any time, and to quit work and discharge his miners, but the law prevents his interference in any manner with the check-weighman; and the threat to close down the mine unless the miners discharged the weighman, while not a threat directly

made to the weighman, was made for the pur-
pose of interfering with him, and it had that effect,
and he was thereby discharged. His object and
purpose was to discharge the weighman and thus
render nugatory the statute. The law loves honesty
and fair dealing, and construes liberally statutes to
prevent fraud and secure fair dealing. 1 Bish.
Cr. Law, 223 (3d Ed.).